**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:** | **CASE NO. 06-03221 BKT** |
| **ISMAEL  MALDONADO TORRES** | **Chapter 13** |
| **ADALIZ  SOLIS FIGUEROA** | |
| **XXX-XX-2295** | |
| **XXX-XX-7241** | |
| | **FILED & ENTERED ON 04/09/2008** |
| **Debtors** | |

**<u>OPINION AND ORDER</u>**

This case is before the Court on the following motions: Debtors' motion requesting reconsideration of dismissal (Dkt. No. 64), the opposition filed by Eurobank (Dkt. No. 65), the debtors' reply to the opposition by Eurobank (Dkt. No.66), the Joint Motion for Entry of Order by Consent, filed between the debtors and Eurobank (Dkt. No. 67),  the trustee's opposition to the joint motion (Dkt. No. 68), the debtors' reply to the trustee's opposition (Dkt. No. 72), the trustee's sur-reply (Dkt. No. 76), and the debtor's response to the trustee's sur-reply  (Dkt. No. 78).

Based upon a review of the motions, the arguments presented, and a review of the entire official file, the Court hereby finds as follows:

**I.      Findings of Facts**

On September 7, 2006, Ismael Maldonado Torres and Adaliz Solis Figueroa (hereinafter "the Debtors"), filed this bankruptcy petition. On said petition debtors listed four (4) properties with different liens on each one. The main residence had a value of $530,000.00 listed in Schedules A and D, and the professional office had a market value of $150,000.00 with a lien in favor of Eurobank for $130,000.00.

On December 21, 2006, the Chapter 13 Trustee requested the dismissal of the case due to debtors' failure to comply with their duties as set forth in 11 U.S.C.A §521 (debtors' failure to provide evidence of income during the sixty (60) days prior to the petition, failure to provide tax returns, and failure to file a plan within the first fifteen (15) days from the filing of the petition). The case was dismissed on December 28, 2006 (Dkt. No. 19).

On December 29, 2006, debtors filed the chapter 13 plan, the statement of current monthly income and a reconsideration of the dismissal order. Creditor Eurobank filed an opposition to the reconsideration for undue delay that is prejudicial to creditors. After reviewing the motions, the Court granted the reconsideration on January 18, 2007. The plan contemplated the sale of the debtors' main residence and the professional office.

Consequently, on February 8, 2007, debtors filed an application to sell property, as stated in their chapter 13 plan. The application informed the Court that the debtors entered into an option contract to sell their main residence for $772,800.00, which is $242,800.00 more than listed in the schedules.

Meanwhile, on August 23, 2007, Creditor Eurobank filed an objection to plan and request for dismissal (Dkt. No. 52), for failure to prosecute, achieve plan confirmation, and failure to pay Eurobank's mortgage payments encumbering the professional office.

Debtors failed to answer the motion and the case was dismissed for a second time on October 24, 2007 (Dkt. No. 61).

On November 5, 2007, debtors once again filed a motion requesting reconsideration of the dismissal order (Dkt. No. 64). Debtors stated in their motion that the main residence at El Monte Development, had been sold and the remaining balance (after payments of liens), had been deposited with the Chapter 13 Trustee.**1** Debtors prayed in their motion that the funds deposited with the Trustee be returned to them in order to pay the pre and post-petition arrears to creditor Eurobank.

On November 16, 2007, Eurobank opposed the reconsideration (Dkt. No. 65), and debtors filed

---

**1** According to an urgent amended application for leave to sell properties (Dkt. No. 38), the total amount left was $132,907.69.

a reply to Eurobank's opposition (Dkt. No. 66).

On November 28, 2007, debtors and Eurobank filed a joint motion requesting entry of order by consent (Dkt. No. 67). This motion informed the court that debtors and Eurobank agreed that the monies deposited by "error" with the trustee would be used to pay the pre and post-petition arrears of Eurobank.

On December 11, 2007, the trustee filed his opposition to the joint motion for entry of order by consent (Dkt. No. 68). The motion argued that the joint proposal to withdraw the monies deposited with the trustee to pay Eurobank's arrears outside the plan is tantamount to a "cross-collateralization" in favor of Eurobank and in detriment of other allowed unsecured creditors.

On January 2, 2008, debtors filed a reply to Trustee's opposition to the Joint Motion for Entry of Order by Consent (Dkt. No. 72). In said motion, debtors alleged that the trustee has no rights under the law or otherwise to attempt to control funds which belong to debtors and arose from the sale of their residence. Section 1306(b) of the Bankruptcy Code is clear in specifying that, except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate. Furthermore, debtors argued that a debtor in a Chapter 13 case is similar to a debtor in possession in a Chapter 11 case. Consequently, the Chapter 13 Trustee is not to receive or be accountable for property of the estate. According to debtors, these functions correspond to them.

On January 30, 2008, the trustee filed a response to debtors' reply to opposition to joint motion for entry of order (Dkt. No. 78). In this motion, the trustee points out the discrepancies in the monies deposited and the alleged price that the property was sold. Also, the trustee referred to the Chapter 13 plan, which was never amended, and to the provisions that established that debtors would sell both properties (the main residence and the primary office), to fund the plan. Finally, the trustee argues that Eurobank had no lien attached to debtors' former residence and that this creditor is entitled to the cure of the pre and post-petition arrears through the Chapter 13 plan and not through a joint stipulation.

**II.      Discussion**

### 1.      Cross-collateralization

Trustee's motion argued that debtors' joint motion for consent is in the nature of a cross-collateralization. Generally speaking, cross-collateralization occurs to a limited extent in almost every case.

Under the Bankruptcy Code §363(e) any creditor whose collateral, including cash collateral, is used by the debtor is entitled to a replacement lien on other assets as adequate protection for any diminution in the value of the creditor's interest in such property caused by the debtor's use. For example, if proceeds of prepetition collateral (i.e. cash collateral) are used by the debtor, the creditor with an interest in such collateral is entitled to a replacement lien on the debtor's other assets, including its postpetition assets, to adequately protect the creditor's interest in such cash collateral. The act of providing the creditor with the replacement lien on postpetition assets to protect the creditor's interest in such collateral is a form of cross-collateralization of the creditor's prepetition claim. A portion of the debtor's prepetition debt is now secured by the replacement lien on postpetition assets. William L. Norton, *Norton Bankruptcy Law and Practice*, § 94:34 (3d ed. 2008).

In the case <u>Matter of Saybrook Mfg. Co.,</u> Inc., 963 F.2d 1490 (11th Cir. 1992), the Eleventh Circuit described the term of "cross-collateralization" as a method of securing prepetition debt with prepetition and postpetition collateral as part of postpetition financing arrangement. The trustee used this case to support his allegation that debtors' joint order by consent is in the nature of a cross-collateralization. We do not agree with trustee's interpretation.

As stated by Norton, *supra*, the act of providing the creditor with the replacement lien on postpetition assets to protect the creditor's interest in such collateral is a form of cross-collateralization of the creditor's prepetition claim. In this case creditor's claim is secured by a prepetition lien in another property of the debtors. The property encumbered by Eurobank's mortgage note is worth more that the total amount of creditor's claim. This means that Eurobank is

not securing prepetition debt with new postpetition collateral because creditor's claim is already secured by debtors' prepetition collateral, which is worth more than the amount claimed.

For the reasons stated in the abovementioned jurisprudence, we differ with trustee's legal argument that the joint motion for entry of order by consent is in the nature of a cross-collateralization agreement. Nevertheless, we concur with trustee's reasoning that it is his prerogative to distribute the surplus gained by debtors' sale of their main residence.

**2.      Chapter 13 Trustee's power to distribute proceeds following the liquidation of property of the estate.**

The commencement of a case under the bankruptcy code creates an estate. 11 U.S.C.A. §541. Such estate is compromised of all the following property:

(i)      All legal or equitable interests of the debtor in property as of the commencement of the case.

(ii)     Any interest in property that the trustee recovers under the provisions of the Bankruptcy Code.

(iii)    Property acquired by the estate after the commencement of the case, and property that is <u>proceeds, product, offspring, rent or profit from property of the estate</u>.

(iv)     ….

In addition to the property specified in §541, the Chapter 13 estate includes all such property that the debtor acquired after the commencement of the case but before the case is closed, dismissed, or converted, whichever occurs first. 11 U.S.C.A. §1306.

Debtors allege that the trustee has no rights under the law or otherwise to attempt to control funds which belongs to debtors and arose from the sale of their residence. In addition, debtors assert that section 1306(b) of the Bankruptcy Code is clear in specifying that except as provided in a confirmed

plan or order confirming a plan, the debtor shall remain in possession of all property of the estate. Conversely, the trustee alleges that the prerogative to disburse funds under a Chapter 13 plan is vested in him.

The Court of Appeals for the First Circuit addresses this apparent conflict between Sections 541 and 1306(b) in the case of Barbosa v. Soloman, 235 F.3d 31 (1ˢᵗ Cir. 2000). In Barbosa, a Chapter 13 Trustee moved to modify debtor's confirmed plan to compel them to increase distribution to unsecured creditors following the sale of investment property at a price significantly in excess of value placed on it in the bankruptcy case.

The Bankruptcy Court held that the funds received by debtor from the postpetition sale of a property should be used to make payments under a modified plan. Furthermore, any modification of debtor's plan, in order to permit debtor to reduce time for payment while retaining sales proceeds attributable to appreciation of their property would not satisfy "best interests" or "liquidation value" test. The Court, as it would be in our case, permitted the trustee to modify the plan to include the excess surplus obtained from the sale of a property in order to disburse more money to unsecured creditors. *Id.* (emphasis added).

This line of reasoning has been used before in; In re Witkowski, 16 F.3d 739, (7th Cir.1994) (finding that "Section 1329 does not require any threshold requirement for a creditor, debtor or trustee to seek modification of an approved bankruptcy plan" and allowing modification in order to increase distribution to unsecured creditors when fewer than expected claims were filed); Ledford v. Brown, 219 B.R. 191, 195 (6th Cir. BAP 1998) (finding that Bankruptcy Court abused its discretion in requiring Trustee to prove threshold changes in circumstances before allowing a modification); and the case of Powers v. Savage 202 B.R. 618, 622 (9th Cir. BAP 1996) (adopting approach of *Witkowski* and finding that "[t]he plain language of §1329 simply does not support a change in circumstances as a prerequisite to modification").

This case is the normative case law in our Circuit and we must follow its ruling to conclude that

the trustee has the authority to keep and disburse the funds obtained from the sale of debtors' residence at a significant higher value that the one listed in the schedules. The monies deposited with the trustee will stay in his control in order to disburse them as mandated in the case of Barbosa. *Id*. See, e.g., In re Shepard, 328 B.R. 601, 605 (1st Cir.BAP (Mass.) Jun 02, 2005); In re Wetzel, 381 B.R. 247, 254 (Bkrtcy. E.D. Wis., 2008) ("This Court concludes that the approach adopted by the courts in *Harchar, Nott* and *Barbosa* is the most logical reconciliation of §§ 1306(a) and 1327(b)").

### III. Conclusion

For the reasons stated above, the trustee's motion in opposition of joint entry of order (Dkt. No. 78) is granted in part and denied in part. In addition, the joint motion requesting entry of order by consent (Dkt. No. 67), filed by debtors and Eurobank's objection to reconsideration (Dkt. No. 65) are hereby denied.

Debtors are ordered to file a new Chapter 13 plan within fifteen (15) days from the entry of this order, to include the profits received from the sale of the main residence to fund the new plan. Furthermore, debtors are ordered to include the pre and post-petition arrears of secured creditor Eurobank in the plan. Debtors' modified plan must, among other things, be proposed in "good faith," and must satisfy the "best interests of creditors". 11 U.S.C.A. §1325(a) and §1329.

Once the new Chapter 13 plan is filed, the motion for reconsideration of dismissal (Dkt. No. 66) will be granted and a confirmation hearing will be scheduled. Finally, the trustee is ordered to file a recommendation of debtor's new amended plan within fifteen (15) days from the filing of the new plan.

**IT IS SO ORDERED.**

**San Juan, Puerto Rico, this 9th day of April, 2008.**

**Brian K. Tester**
**U. S. Bankruptcy Judge**

**C: ALL CREDITORS**